TODD BLANCHE
U.S. Deputy Attorney General
JORDAN FOX
Chief of Staff & Associate Deputy
 Attorney General
Special Attorney
JOHN F. BASIAK JR.
Assistant United States Attorney
Chief, Civil Division
970 Broad Street, Newark NJ 07102
john.basiak@usdoj.gov
*Attorneys for Respondents*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILMER MONCADA DE LA HOZ, | Hon. Michael E. Farbiarz, U.S.D.J. |
| *Petitioner*, | Civil Action No. 26-1016 |
| v. | |
| KRISTI NOEM, *et al.*, | **DECLARATION OF JOHN F. BASIAK JR.** |
| *Respondents*. | |

I, JOHN F. BASIAK JR, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an Assistant United States Attorney at the United States Attorney's Office for the District of New Jersey and Chief of the Civil Division.

2. I submit this declaration in response to the Court's February 6, 2026 order, ECF No. 7, requiring an explanation for Respondents' violation of the Court's February 3 injunction, as well as steps taken to mitigate the risk of future Court violations since *Guamug Pacheco v. Soto*, 26-cv-00024.

3. I do not have first-hand personal knowledge of all the facts, but I have personally undertaken an investigation to determine what happened, as required by

1

the Court, ECF No. 7, and as Chief of the Civil Division, I am responsible for ensuring our Division's compliance with Court orders.

### Post-*Guamug Pacheco* Actions

4. In *Guamug Pacheco*, the Court held a hearing on January 6 "to understand more fully why its orders at ECF 3 and ECF 4 were not timely complied with and the steps that will be taken to avoid a repeat." ECF No. 7.

5. During that hearing, I respectfully explained to the Court that our Office was facing an unprecedented increase in immigration filings, but that adherence to Court orders was our highest priority and a bedrock principle of our Office.

6. Historically, the Civil Division handled approximately 12-15 immigration filings per month, but that number has increased to approximately 161 in December 2025 and 193 in January 2026, making our District among the busiest in the country.

7. Following the January 6 hearing, the Civil Division devoted additional resources and created further safeguards to ensure implementation and timely transmission of the Court's orders to U.S. Immigration and Customs Enforcement ("ICE"), including the following:

    a. Repeatedly emphasizing in meetings and in e-mail to the Civil Division that the Court's immigration orders are the highest priority of the Division and 100% compliance was expected.

2

b. Repeatedly emphasizing that in the event of a violation of a Court order, we must immediate disclose to supervisors, clients, petitioners, and the Court that violation.

c. Onboarding and assigning three new Civil Division AUSAs to immigration habeas assignments on or about January 12.

d. Finalizing an agreement between our Office and ICE for two Special Assistant U.S. Attorneys from ICE to support our immigration habeas practice fulltime, beginning on February 9.

e. Reassigning three Criminal Division AUSAs to immigration habeas assignments on or about February 2, in addition to the four Criminal Division AUSAs assigned to immigration habeas in mid-December.

f. Reallocating Office funds for overtime for Civil Division paralegals to monitor the immigration habeas docket during weekends and off-hours, beginning on or about January 21.

g. Increasing from two to five the number of paralegals assigned to monitor the immigration habeas docket on a rotating basis to timely transmit Court orders to ICE.

h. Seeking the reassignment of two Criminal Division paralegals to the Civil Division to assist with docketing and file management so that Civil Division paralegals could focus on timely compliance with immigration habeas orders.

    i. As of February 5, reviewing resumes and interviewing candidates for three more Civil AUSA positions to handle immigration habeas assignments in whole or in part.

    j. Requesting additional hiring waivers and resources from Main Justice to hire Civil AUSAs to support the Office's immigration docket.

    k. Personally conducting an after-hours review of as many orders and ECF entries as possible as an extra measure of quality control and to ensure that assigned AUSAs and staff are forwarding Court orders to ICE and taking any other steps necessary to implement Court orders.

**Investigation Into Delay in This Case**

8. On February 3, at 1:59 PM, the Court entered a text order enjoining Respondents from removing Petitioner from this District or causing his removal. ECF No. 3.

9. At 7:28 PM, as part of my quality control process, I reached out to Civil Division personnel on duty seeking confirmation that the Court's order had been sent to ICE because I did not have a record of that happening.

10. Two Civil Division personnel were on duty at the time the Court issued the order, but the first person was temporarily overwhelmed with transmitting other orders and assigning habeas petitions, and the second person believed that the first person had transmitted the order already.

4

11.  Following my inquiry, at 8:10 PM,[1] our Office transmitted the order to ICE for the first time.  However, according to ICE, Petitioner was already in process of transferring. He was booked out of the Delaney Hall detention center at 6:00 PM.

12.  Upon learning of the Court's order, ICE's legal office immediately contacted ICE's Enforcement and Removal Operations ("ERO") in Newark, New Jersey, to see if the transfer could be stopped, but it could not. ERO Newark then requested Petitioner's return that same night.

13.  On February 6, Petitioner was booked out of a detention facility in Arizona at 8:00 AM and ICE returned him to New Jersey.

14.  On February 7, ICE released Petitioner from custody.

## Implementing Further Procedures

15.  To further reduce the possibility of this situation happening in the future, I have removed all non-immigration duties from our immigration-specific paralegal to ensure that his sole focus is assigning petitions and forwarding and implementing the Court's orders.  I will also take steps so that three paralegals are on duty double checking each other's work to avoid the untimely forwarding of a Court order to ICE.  Additionally, I am in the process of implementing an immigration-specific Duty AUSA as an additional quality control measure to double check that all orders have been timely handled and to address off-hour and weekend issues, in addition to myself.

---

[1] Our February 6 status report to the Court, ECF No. 6, stated that ICE received the Court's order at 8:21 PM.

16. I take full responsibility for the violation of the Court's order, and I apologize to the Court and Petitioner that Petitioner endured a transfer out of and then back to New Jersey resulting from that violation.

                        By:    /s/ John F. Basiak Jr.
                               JOHN F. BASIAK JR.
                               Assistant United States Attorney
                               Chief, Civil Division
                               *Attorney for Respondents*

Dated: February 9, 2026